## E. T. HATHAWAY V. THE STATE.

### No. 938.   Decided June 26th, 1896.

**1. Trusts—Conspiracies Against Trade—Construction of Statute.**

Art. 981, Penal Code, which declares, the parties who are amenable to, and the penalties for, a violation of the provisions of the law of trusts and conspiracies against trade, creates two distinct character of offenses: (1) As to all persons who may become engaged in the conspiracy, or take part therein; or aid, or advise in its commission. (2) As to all who shall, as principals, managers, directors, agents, servants or employees, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates or orders thereunder, or in pursuance thereof. that is, two or more persons may enter into the conspiracy originally; or others after the conspiracy is formed may enter into it; or after the conspiracy is formed, any person not an original conspirator may knowingly serve as principal, manager, director, agent, servant or employee of the trust or combination in carrying out its purposes—and in each of such conditions the party is amenable to, and liable under the law.

**2. Same—Indictment and Proof.**

Where the indictment for a trust, or conspiracy against trade, charges that the accused was an original conspirator, or one who attached himself to it after its formation, it must be proved that he was an original party to the conspiracy, or that he joined it after its formation; and proof that he was an agent, would not be sufficient unless it went further and showed, that he knew of the conspiracy.

**3. Same—Indictment as to an Agent.**

In order to convict a person as agent of the trust or combination under the statute, the indictment must allege the fact, that he was agent, and must also allege, that he knew of the conspiracy. To hold a party responsible, as an agent for such a trust or conspiracy, the indictment must allege, that he knew of the conspiracy and its purposes.

**4. Same—Constitutionality of the Law.**

Our Supreme Court has decided, that our statutes on trusts and conspiracies against trade are constitutional.

APPEAL from the District Court of McLennan.   Tried below before Hon. S. R. SCOTT.

This appeal is from a conviction for, "a conspiracy against trade," the punishment being assessed at a fine of $50.

The indictment is set out in the opinion, and, inasmuch as the appeal was determined upon the sufficiency of the indictment, no further statement of the case is necessary.

The case was called for trial December 2nd, 1895, and the defendants who were arrested, to-wit: Arthur M. Finley, William Grice, E. T. Hathaway, F. A. Austin and W. E. Hawkins, severed, the other defendants not having been arrested, and E. T. Hathaway, the appellant, was placed on trial, and announced ready, as did the State.

After the announcement of ready for trial, the defendant, E. T. Hathaway, filed and presented exceptions to the indictment in substance, to-wit: (1) Because it did not appear from the indictment that any offense against the law had been committed. (2) Because the indictment showed upon its face that the District Court of the Fifty-fourth Judicial District had no jurisdiction. (3) Because the Act of 1889, upon which the prosecution was founded, was violative of both the Constitution of the United States and of the State of Texas, for the reason that said statute discriminated between different classes of persons and citizens of the State of Texas and of the United States, and denied certain persons and citizens the equal protection of the law, and proposed to deprive certain citizens of liberty, property, privileges and immunities in a way other than by due course of the law of the land. (4) Because said Act of March 30, 1889, was inoperative and void as to persons resident beyond the territorial limits of Texas. (5) Because said act did not prohibit a trust, or declare it illegal, nor did it declare it an offense, or propose to punish it but merely defined a trust, without denouncing it, and was, therefore, not a penal law of the State of Texas, and no prosecution could be maintained under it. (6) Because the indictment showed upon its face that the parties present were engaged in interstate commerce, within the meaning of the Constitution and laws of the United States, and the District Court of the Fifty-fourth Judicial District had no jurisdiction. The court overruled these exceptions, to which the defendant excepted.

On December 14th, 1895, the defendant, E. T. Hathaway, filed his motion for a new trial, setting up fifty-four distinct grounds therefor. This motion was overruled by the court on December 16th, 1895, to which the defendant, E. T. Hathaway, excepted, and gave notice of appeal.

On December 14th, 1895, the defendant also filed his motion in arrest of judgment, upon substantially the same grounds set up by his exceptions to the sufficiency of the indictment filed antecedent to the trial, with this additional ground, however, in substance, to-wit: "Because the indictment was substantially defective in that it charged the defendant, Hathaway, with having violated the law of conspiracy against trade, in carrying out, as principal, director, agent or employe, the stipulations of the Standard Oil trust agreement, but failed to charge that the defendant knowingly did this, when by the terms of the law no violation can be committed except the same be done knowingly; and that before defendant could be convicted, it should have been alleged in the indictment that he acted knowingly; that the court, in his charge, submitted such issues of knowledge to the jury, and that there was no allegation authorizing it, nor was there any proof thereof, and for this failure to charge in the terms of the statute, the indictment was fatally defective. The court overruled defendant's motion in arrest of judgment on December 16, 1895, to which the defendant in open court excepted.

*C. P. & J. D. Johnson*, and *Clark & Bollinger*, for appellant, filed a most able and elaborate brief, in which they attack the constitutionality of the act of the legislature, approved March 30th, 1889, against the formation of trusts and conspiracies against trade.

[NOTE.—This law was amended by the Act of 1895, and the amendment obviates several of the objections so forcibly urged in the brief.—Reporter.]

Upon the proposition that the actsc harged against defendant involved a transaction of interstate commerce, over which the State of Texas has no control; but, which is expressly reserved, by the Constitution of the United States, to the general government, they cited: Mobile v. Kimball, 102 U. S., 691–702; Gloucester Ferry Co. v. Penn., 114 U. S., 196–203; Kidd v. Pierson, 128 U. S., 120; Gibbons v. Ogden, 9 Wheat, 1, 195–196; Act of Congress, July 2nd, 1890, Chap. 647; Anheuser-Busch Brewing Association v. Houck, 30 S. W. Rep., 870; U. S. v. E. C. Knight Co., 156, U. S., 1; Gulf, Colorado & Santa Fe Ry. Co. v. Dwyer, 75 Texas, 579; Gulf, Colorado & Santa Fe Ry. Co. v. Hefley, 158 U. S., 98; Morgan v. La., 118 U. S., 455; Ex parte Asher, 23 Tex. Crim. App., 662; S. C. 128 U. S., 189; LeLoup v. Port of Mobile, 127 U. S., 640; Bateman v. West & Star Milling Co., 1 Ct. Civ. App. (Texas) 90; New Orleans Gas Co. case, 115 U. S., 650; Leisy v. Hardin, 135 U. S., 100; County of Mobile v. Kimball, 102 U. S., 691; Brown v. Houston, 114 U. S., 622; Railway v. Ill., 118 U. S., 557; Henderson v. Mayor of New York, 92 U. S., 257; Railway v. Husen, 95 U. S., 465; Walling v. Mich., 116 U. S., 446; Tiedeman Lim. Police Power, 116.

A remaining ground as to the sufficiency of the indictment is set forth in appellant's motion in arrest of judgment as follows:

"Because said indictment under which this said defendant has been convicted is substantially defective in this, that it charges this defendant, E. T. Hathaway, with having violated said act or law, of conspiracy against trade, in carrying out as principal, manager, director, agent or employe, the stipulations, purposes, prices, rates and orders of the Standard Oil trust, and other trusts and combinations unlawfully formed in restraint of trade, but does not charge that said defendant, knowingly, carried out said stipulations, purposes, prices, rates, orders, etc., whereas by the terms of said law, no violations for such acts can be committed except the same be done, knowingly; that before defendant could be convicted for such acts; it should have been alleged in the indictment that they were performed by him knowingly; that the court, in his charge, submitted such issue of knowledge to the jury, and that there was no allegation authorizing it, nor was there any proof authoring it, and said indictment is fatally defective for this reason."

The law under which defendant was being prosecuted (Sec. 6) prescribes as follows:

"Any violation of either, or all, the provisions of the act shall be, and is hereby declared a conspiracy against trade, and any person who may

be, or who may become engaged in any such conspiracy, or take part therein, or aid or advise in its commission, or who shall as principal, manager, director, agent, servant or employe, or in any other capacity, knowingly, carry out any of the stipulations, purposes, prices, rates or orders thereunder, or in pursuance thereof, shall be punished by fine of not less than $50, nor more than $5,000, and by imprisonment in the penitentiary for not less than one year, nor more than ten years, or by either such fine or imprisonment. Each day during the violation of this provision shall be considered a separate offense."

It is evident, from an inspection of this section, that it provides for two separate offenses (if the law is operative at all). (1) It provides for the punishment of any person who may be, or may become engaged, in any such conspiracy, or take part therein, or aids or advises in its commission. (2) It provides for the punishment of any principal, manager, director, agent, servant or employe who, knowingly, carries out any of the stipulations, purposes, etc. The law seems to contemplate a distinction between these two classes. The first class constitute principals, within the general definitions and purposes of the Code, because any person who becomes engaged in a conspiracy, or takes part therein, or aids or advises in its commission must necessarially be a principal within the meaning and definition of a principal, as known to our law. There is no necessity for an allegation in an indictment against these, for such indictment to allege knowledge, because, *ipso facto*, knowledge is implied. But when we come to the second class, the statute particularly prescribes, that knowledge is essential, before any party, coming within the second category, shall be punished under the terms of the act. Any other construction would be productive of absurdity, and would place the State in the attitude of legislating for the punishment of its citizens who, without any knowledge or purpose of doing wrong, should, nevertheless, become a manager, agent, servant, or employe of a corporation, which, without his knowledge, was in some secret manner, a member of a trust or combination in restraint of trade. Of course this was not the purpose of the legislation; but, on the contrary, the purpose was to punish all principal participants, in such conspiracy, and all managers, agents, servants, or employes, knowing of the conspiracy, voluntarily engaged in carrying out any of its purposes.

The indictment in this case charges appellant, E. T. Hathaway, as a principal in some counts, but in the sixth count, which was an omnibus count, it seems to charge him as an agent, and the court so assumed throughout its charge. The indictment, in the sixth count, charges, among other things, as follows:

"That said trustees of the Standard Oil trust, and said officers of the Waters-Pierce Oil Company, in pursuance of the trust agreement hereinbefore set out, have subdivided Texas into four grand divisions, in which to sell the oils of the Waters-Pierce Oil Company, and have opened an agency for each grand division, and many local agents for the various towns and counties of Texas, and in McLennan County, State of

Texas, to sell their said oils; that said various agents are acting under the control, supervision, directions, and orders of said trustees and said officers of said Waters-Pierce Oil Company, and send daily reports of their sales of said oils to said trustees and officers; that William E. Hawkins, among many others, is the representative and local agent in McLennan County, State of Texas, and by agreement is acting with, conspiring, and confederating with, said trustees of the Standard Oil trust, and said officers and agents of the Waters-Pierce Oil Company, and is carrying out, executing, and enforcing in McLennan County, State of Texas, all the provisions, terms and stipulations of said trust conspiracy," etc.

As a matter of fact, the truth developed that E. T. Hathaway, the appellant, was the division agent of the Waters-Pierce Oil Company, at Denison, Texas, and this was his only connection with the Waters-Pierce Oil Company; and no connection whatever was shown between him and the other defendants, charged jointly with him in the indictment. The indictment does not even charge Hawkins, the local agent in McLennan County, with acting with knowledge, and there is an entire absence of this allegation, as to any other agent, including appellant. The court, however, in this charge, repeatedly submitted issues to the jury upon the fact, that E. T. Hathaway, the appellant, was agent of the Waters-Pierce Oil Company, and knowingly carried out the terms, stipulations, etc., of the trust agreement, and authorized the jury to find him guilty in the event that he did so, knowingly, carry out such purposes. If we are correct in saying that the indictment charges appellant as agent, then it is fatally defective in its failure to charge that he acted with knowledge. This knowledge on the part of the agent is a constituent element of the offense, and must be set forth distinctly in the indictment. It is possible, under the rules of criminal pleadings, another word, or words, might have been substituted in its place and stead, which would have sufficed to preserve the pleadings from exception. But this is not the case. There is no allegation in the indictment, that the agents of the Waters-Pierce Oil Company, acted with knowledge, and no equivalent words are employed, of similar import. Gaddy v. State, 8 Tex. Crim. App., 127; Parker v. State, 9 Tex. Crim. App., 351; Hoskey v. State, Id., 202; Prophet v. State, 12 Tex. Crim. App., 233; Huntsman v. State, 12 Tex. Crim. App., 619; Pierce v. State, 17 Tex. Crim. App., 232; Kerry v. State, 17 Tex. Crim. App., 179; Strickland v. State, 19 Tex. Crim. App., 518.

If the offense be composed of different constituents, each constituent being itself an offense, the particular constituents relied on, must be specifically and accurately averred. State v. Wupperman, 13 Texas, 33; Alexander v. State, 29 Texas, 495; Kerry v. State, 17 Tex. Crim. App., 179; Huntsman v. State, 12 Tex. Crim. App., 619.

We submit, upon the authority of these cases, that the indictment is fatally defective for want of this allegation, as to knowledge, on the part of the agent. The court below having overruled the motion of ap-

pellant to require the State to elect, after the close of the testimony, as to the counts upon which it would proceed, this court, upon the face of the indictment, cannot say upon which count the appellant was convicted. Some of these counts, as said before, charged him directly as principal, with conspiring and combining and confederating with Rockefeller and others. The sixth count, and the one which we can easily surmise, furnished the basis of the conviction, would seem to imply that he was an agent. The facts, uncontradicted, are that he was simply an agent of the Waters-Pierce Oil Company. The establishment of the agency precludes the idea of a conviction as principal, and if he was not convicted as an agent, such conviction must be valueless. Under so much of the indictment as charges him as principal, he could not be convicted as an accomplice or accessory. Bean v. State, 17 Tex. Crim. App., 60; Golden v. State, 18 Tex. Crim. App., 637; Willson's Crim. Stat., § 155.

And if he was convicted as an agent, upon the charge of the court, submitting such issue, and which charge embodied the law as laid down in the statute, that he must have knowingly aided and assisted, then the conviction is without support altogether, because the indictment does not charge, that as agent he knowingly contributed to the purposes of the trust. The allegata, and probata, do not meet and correspond, and the State, as shown by bill of exceptions, only insisted upon his conviction because he was an agent, there being no pretense of evidence, that he ever participated in any manner with the alleged principal conspirators. We submit that the motion, in arrest of judgment on this ground, should have been sustained.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of engaging in a conspiracy against trade, and his punishment assessed at a fine of $50, and prosecutes this appeal. The indictment is in six counts. The first count is as follows: "That in said County of McLennan, State aforesaid, on or about October 1, 1894, John D. Rockefeller, Henry M. Flagler, William Rockefeller, John D. Archbald, Benjamin Brewster, Henry H. Rogers, Wesley H. Tilford, Henry Clay Pierce, Arthur M. Finley, C. M. Adams, J. P. Gruet, E. Wells, Wm. Grice, E. T. Hathaway and F. A. Austin did unlawfully agree, combine, conspire, confederate and engage with William E. Hawkins and divers other persons, to the grand jurors unknown, in a conspiracy against trade, then and there, with the said William E. Hawkins and the said other persons, creating a trust by a combination of their capital, skill, and acts with the said Wm. E. Hawkins and other persons, for the purpose, design, and effect to create and carry out restrictions in trade, to-wit: in the manufacture, production, sale, trade, and shipment of petroleum, petroleum oils, all the products of petroleum, refined oils, illuminating oils, and lubricating oils, the same being commercial commodities, by keeping the price of said oils at a certain price per gallon, and at a certain price as other-

wise sold, which price was far above the true market price of said oils, and for the purpose and effect to prevent competition in the manufacture, production, sale, trade and shipment of petroleum, petroleum oils, all the products of petroleum, refined oils, illuminating oils, and lubricating oils, and to limit and reduce the production of said products, and to raise the price thereof above the true market value, and cause the same to be purchased by the actual consumers at a great price above the true market value, and to prevent competition in the manufacture, production, sale, trade, and shipment of petroleum, petroleum oils, all the products of petroleum, refined oils, illuminating oils, and lubricating oils, the same being commercial commodities, and products of prime necessity to the people, and for the purpose and effect to fix at a certain standard and figure the price of petroleum, petroleum oils, all the products of petroleum, refined oils, illuminating oils, and lubricating oils, whereby the prices thereof were and are established and fixed in said County of McLennan at a fictitious value, greatly in excess of the true market value. And the said John D. Rockefeller, Henry M. Flagler, William Rockefeller, Benjamin Brewster, John D. Archbald, Henry H. Rogers, Wesley H. Tilford, Henry Clay Pierce, Arthur M. Finley, C. M. Adams, J. P. Gruet, E. Wells, Wm. Grice, E. T. Hathaway, and F. A. Austin, did then and there unlawfully make and enter into a trust, combination, contract, agreement, obligation, and conspiracy with the said William E. Hawkins and other persons in said county, and all of said persons did agree, combine, conspire, confederate, and engage with each other and among themselves, that they would not manufacture, produce, sell, trade, and ship petroleum, petroleum oils, all the products of petroleum, refined oils, illuminating oils, and lubricating oils below a certain price, which price was and is far above the true market value of said commercial commodity, and that they would fix and keep the price of said oils in said county at a certain price and graduated figures, and that for the purpose of establishing and setting the price of said oils amongst themselves, and to preclude and destroy free and unrestricted competition in the manufacture, production, sale, trade, and shipment of said oils, they agreed to pool, combine, and unite their interests in the manufacture, production, sale, trade, and shipment of said oils, so that the price thereof would be affected and fixed at a certain figure; against the peace and dignity of the State." So far as this appellant is concerned, the four succeeding counts are similar to the first count, above quoted. The sixth count is as follows: "And the said grand jurors aforesaid, upon their oaths in said court, do further present: That on or about the 2nd day of January, A. D. 1882, a great many corporations, partnerships, firms, and individuals controlling, owning, and operating 95 per cent. of the capital invested in petroleum, its products, refined oils, illuminating oils, and lubricating oils, and in the manufacture, sale, and transportation thereof, met at some place in the United States, to the grand jurors unknown, and organized themselves into a trust, combination, conspiracy, and confederation with each other

and among themselves to organize a monopoly to control the oil trade in the United States. That there were about thirty-nine corporations, partnerships, firms, and individuals who entered into and bound themselves by said trust, conspiracy, combination, and agreement, and that they were scattered over many States of the United States, and owned, controlled, and operated almost the entire petroleum oil industry of the United States, and that the purposes of said trust, conspiracy, combination, and agreement were to organize said corporations, partnerships, firms, and individuals into an agreement, combination, and trust, to be known as the 'Standard Oil Trust,' for the purposes of mining, manufacturing, producing, refining, and dealing in petroleum and all its products, and all the material used in such business, and transact other business collateral thereto, and for such other purposes and powers as should be embraced in the several charters, such as should seem expedient to the parties thereto procuring charters. That, aside from the ostensible purposes already mentioned, the agreement, conspiracy, and trust were created and organized for the purpose of absorbing and controlling and monopolizing the petroleum oil industry of the United States, and that said thirty-nine corporations, partnerships, firms, and individuals also entered into and organized said agreement, conspiracy, trust, confederation, and combination known as the 'Standard Oil Trust' for the purposes of—(1), creating and carrying out restrictions in trade; (2), of limiting the production and increasing the price of petroleum and its products, the same being a commercial commodity; (3), of preventing competition in the making, manufacturing, and transportation and sale of petroleum oil and its products; (4), of fixing at a certain standard and figure the price of petroleum oil and its products, whereby their prices to the public would be controlled and established, and said products being of prime necessity to the people for use and consumption; (5), for the purpose of binding themselves not to sell, dispose of, and transport petroleum oil and its products at a fixed and graduated figure, and to establish and settle the price of petroleum and its products at such figures so as to preclude a free and unrestricted competition in the making, manufacturing, sale, and transportation of petroleum and its products, and for the purpose of pooling and combining their interests in the making, manufacture, sale, and transportation of petroleum and its products in such a manner that the price thereof would be effected; the said petroleum oil and its products being an article of trade and commercial commodity. That each of said corporations, partnerships, firms, and individuals agreed among themselves and with said trust to form in the States where they were respectively domiciled a corporation known as the 'Standard Oil Company,' of the State where formed, and to become a part of the trust known as the 'Standard Oil Trust,' and that many such corporations, in pursuance of such agreement and trust, became a member and part of said 'Standard Oil Trust.' The corporations, partnerships, firms, individuals, and corporations formed in pursuance of the agreement mentioned agreed to transfer and assign, and did transfer and as-

sign, all their stock to nine trustees of the 'Standard Oil Trust,' to be held by said trustees indefinitely. That the said corporations, partner ships, firms, and individuals agreed that nine trustees should be appointed to take charge of, control, and operate the affairs of the 'Standard Oil Trust,' and that a certain number of trustees should be elected annually after the election of the original trustees. That said trustees were required, empowered, and authorized to issue trust certificates to said corporations, partnerships, firms, and individuals in consideration for their said stock delivered and transferred to said trustees. That the value of said trust certificates so issued amounted to many millions of dollars. That the general office of said 'Standard Oil Trust' should be in New York City. That the meetings should be there held, and the trustees should be elected in New York City, and that the headquarters and general offices of the said nine trustees should be and remain in New York City. That the said corporations, partnerships, firms, and individuals then and there on the 2d of January, 1882, agreed and contracted that the 'Standard Oil Trust' should be perpetual, and that it has existed since said agreement and trust, and that its general offices and headquarters and the general offices and headquarters of the said trustees are now situated and located in New York City, State of New York, pursuing and carrying out the purposes of said trust, conspiracy, combination, contract, and confederation as hereinbefore detailed and stated. That said trustees are now engaged in carrying out, enforcing, and executing the terms and provisions of said trust, combination, conspiracy, and contract between said corporations, partnerships, firms, and individuals, and said 'Standard Oil Trust' is now in full force and effect, and have been since the 2d day of January, 1882, controlling, managing, and directing ninety-five per cent. of the capital invested in the petroleum industry, and that the value of said trust certificates now in existence is about $200,000,000. That the trustees of the 'Standard Oil Trust' now in office are composed of the following named persons, to-wit: John D. Rockefeller, Henry M. Flagler, William Rockefeller, John D. Archbald, Benjamin Brewster, Henry H. Rogers, and Wesley H. Tilford, and that said trustees are now carrying out, enforcing, and executing the trust agreement and conspiracy hereinabove set out. That said trustees have divided the market for petroleum oil and its products into various subdivisions between the members of the 'Standard Oil Trust,' allotting to each corporation, firm, member, or individual of said trust a certain State or States in which to have the exclusive right to sell petroleum and its products. That the Waters-Pierce Oil Company, a corporation domiciled in the State of Missouri, has been allotted the market and territory lying in the States of Missouri, Arkansas, Louisiana, and Texas, and had the exclusive right to sell petroleum oil and its products in said States, and that the other members of said 'Standard Oil Trust' are bound by said trust not to invade said territory and sell therein. That the Waters-Pierce Oil Company has the exclusive right under said trust to sell petroleum oil and

its products in Texas, and in McLennan County, Texas. That the officers of said Waters-Pierce Oil Company are as follows: Henry Clay Pierce, president; Arthur M. Finley, vice-president; C. M. Adams, treasurer; J. P. Gruet, secretary; and E. Wells, auditor; and that Arthur M. Finley, vice-president, lives in Galveston, State of Texas. That said trustees of the said 'Standard Oil Trust,' and said officers of the Waters-Pierce Oil Company, in pursuance of the trust, agreement, and conspiracy hereinbefore set out, have subdivided Texas into four grand divisions in which to sell the oils of the Waters-Pierce Oil Company, and have appointed an agent for each grand division, and many local agents for the various towns and counties of Texas, and in McLennan County, State of Texas, to sell their said oils. That said various local agents are acting under the supervision, direction and orders of said trustees and said officers of the said Waters-Pierce Oil Company, and send daily reports of their said sales of oil to said trustees and officers. That William E. Hawkins, among many others, is the representative and local agent in McLennan County, State of Texas, and by agreement is acting with, conspiring, and confederating with said trustees of the 'Standard Oil Trust,' and the said officers and agents of the Waters-Pierce Oil Company, and is carrying out, enforcing, and executing in McLennan County, State of Texas, all the provisions, terms, and stipulations of said trust, conspiracy, contract, combination, and confederation, and was so doing on the 1st day of October, 1894. That on or about October 1st, 1894, in McLennan County, State of Texas, in strict pursuance of and in accordance with said designs, agreements, trusts, combinations, conspiracy, contract, and confederation, and to carry out and execute said purposes, as hereinbefore detailed and set out, John D. Rockefeller, Henry M. Flagler, William Rockefeller, John D. Archbald, Benjamin Brewster, Henry H. Rogers, Wesley H. Tilford, Henry Clay Pierce, Arthur M. Finley, C. M. Adams, J. P. Gruet, E. Wells, William Grice, E. T. Hathaway, F. A. Austin, and William E. Hawkins, did unlawfully agree, combine, conspire, and confederate with each other and among themselves, and with divers other persons in McLennan County, to the grand jurors unknown, in a conspiracy against trade, then and there creating a trust, by a combination of their capital, skill, and acts with each other for the purpose, design, and effect to create and carry out restrictions in trade, to-wit: in the manufacture, production, sale, trade, and shipment of petroleum, petroleum oils, all the products of petroleum, refined oils, illuminating and lubricating oils, the same being articles of trade and commercial commodities, by keeping the price of said oils at a certain price per gallon, or at a certain price, as otherwise sold, which price was far above the true market price of said oils; and for the purpose and effect to prevent competition in the manufacture, production, sale, trade, and shipment of petroleum, petroleum oils, all the products of petroleum, refined oils, illuminating and lubricating oils, and to limit and reduce the production of said products, and to raise the price thereof above the true market value, and to cause the same to be

purchased by the actual consumers at a great price above the true market value, and to prevent competition in the manufacture, production, sale, trade, and shipment of petroleum, petroleum oils, all their products, refined oils, illuminating and lubricating oils, the same being commercial commodities and products of prime necessity to the people; and for the purpose and effect to fix at a certain standard and figure the price of petroleum, petroleum oils, their products, refined oils, illuminating and lubricating oils, whereby the prices thereof were and are established and fixed in the said County of McLennan, State of Texas, at a fictitious value, greatly in excess of the true market value; and did then and there unlawfully make and enter into a trust, combination, contract, agreement, obligation, and conspiracy, and did unlawfully agree, combine, conspire, confederate, and engage with each other, that they would not manufacture, produce, sell, trade, and ship petroleum, petroleum oils, their products, refined oils, illuminating and lubricating oils, below a certain price in McLennan County, State of Texas, which price was and is far above the true market value of said products, and that would fix (and did fix) and keep the price of said oils, in said county, in said State, at a certain price and graduated figure; and that for the purposes of establishing the prices of said oils, and to preclude and destroy free and unrestricted competition in the manufacture, production, sale, trade and shipment of petroleum, its products, refined oils, illuminating oils, and lubricating oils, all the said above named persons agreed to pool, combine, and unite their interests, in the manufacture, production, sale, trade, and shipment of said products and oils, so that the price thereof would be affected and fixed at a certain figure; and the prices of said oils were affected and fixed at a certain figure, and free and unrestricted competition in said oils, products, and articles of trade was prevented and destroyed. That the prices of said oils were fixed and established, and free and unrestricted competition prevented in the following manner, to-wit: All of said above-named persons, in connection with divers other persons, to the grand jurors unknown, would bring their oils into the various towns of Texas, and into McLennan County, State of Texas, and where they found competition in the sale of their oils would immediately cut prices far below a profitable selling price, and would not sell their oils to any dealer who would not agree not to purchase any competitive oils, and by reason of their immense power, wealth, fortunes, trusts, mutual combinations, and monopolies keep said prices at said unprofitable figures until all competition had been crushed and destroyed, and all competitors had fled the market and towns of said State and McLennan County, when they would raise the prices of their oils far above the true and honest market prices, and exact unreasonable and exorbitant prices from the actual consumers, and then and there keep fixed and established said prices. That in the manner, by the methods, and through the trusts hereinbefore described the said persons have carried restrictions in trade, increased the price of petroleum, its products and oils, and have destroyed competition in the manufacture, sale, and trans-

portation of oils, and have fixed the prices of oils as a standard figure, so as to control the price thereof to the public, and have pooled, combined, and united their interests in the manufacture, sale, and transportation of oils in such a manner as to affect the price thereof, and have greatly increased the prices of oils to the people in McLennan County, State of Texas. That the Waters-Pierce Oil Company, acting with said trust, controls and manages 99 per cent. of the oil business of Texas, and that said business amounts to half a million barrels annually. Against the peace and dignity of the State."

This indictment was framed under the act of March 30, 1889. The clause of said act under which it was framed reads as follows: "Art. 981. Any violation of either or all the provisions of this law shall be and is hereby declared a conspiracy against trade, and any person who may be or who may become engaged in any such conspiracy or take part therein, or aid or advise in its commission, or who shall, as principal, manager, director, agent, servant or employe, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, or orders thereunder or in pursuance thereof, shall be punished by fine not less than fifty dollars nor more than five thousand dollars, and by imprisonment in the penitentiary not less than one nor more than ten years, or by either such fine or imprisonment. Each day during a violation of this provision shall constitute a separate offense." See, Penal Code, 1895, Art. 981. This act, according to the construction we place upon it, constitutes two distinct characters of offenses. The first portion thereof makes all persons who may be, or may become engaged in a conspiracy against trade, or who take a part therein, or aid or advise in its commission, offenders. The latter portion of said act makes those criminal who shall, as principals, managers, directors, agents, servants, or employes, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, or orders thereunder, or in pursuance thereof; that is, two or more persons may enter into a conspiracy against trade, and become liable thereunder criminally, and others, after the conspiracy has been formed, may enter into said conspiracy, and become amenable as co-conspirators with those originally forming the trust or combination; and, after a conspiracy against trade has been formed, any person, though not himself a conspirator, if he shall as principal, manager, director, agent, servant, or employe, carry out the purposes, prices, rates, or orders of such conspiracy, then he becomes a violator of this statute. But it will be noted that, in order for the latter to become amenable, he must knowingly serve the trust in one of the capacities mentioned; that is, he must know that the trust or conspiracy against trade has been formed, and with such knowledge he must serve the trust in some capacity in carrying out its purposes—that is, he may be a conspirator, and then he may serve the trust in the capacity of an agent or servant; and in such case an indictment charging him simply as a conspirator, with proof that he was such, would be maintained, notwithstanding the evidence also showed that he was an

agent or servant of the company. In the case at bar it will be noted that there is no count that charges appellant as an agent. All charge that he was a party to the conspiracy, either as an original party or one who attached himself to it after its formation. This being the case, to sustain this conviction the proof must show that he was an original party to the conspiracy, or that he joined it after its formation. Proof that he was an agent would not be sufficient, unless it went further, and showed that he knew of the conspiracy. In order to convict a person of being an agent of a conspiracy, such as described in the statute, the indictment must allege that fact, and must also allege that he knew of the conspiracy. Upon the trial of this case, all proof which tended to show the agency of appellant was absolutely worthless without the further proof that he knew of the conspiracy. The statement of facts contains a little over 200 pages of typewritten matter, and we have given the same a thorough examination, and there is no evidence showing that the defendant was one of the original conspirators composing the trust, or that he afterwards entered into and joined said conspiracy.

The sixth count in said indictment charges John D. Rockefeller, Henry M. Flagler, William Rockefeller, John D. Archbald, Benjamin Brewster, Henry H. Rogers, Wesley H. Tilford, as being the trustees of the Standard Oil trust, now carrying out the provisions of said trust. It alleges that thirty-nine corporations, partnerships, firms, etc., went into and compose said trust, and that it was formed in the year 1882, and still continues; that the Waters-Pierce Oil Company, a corporation of the State of Missouri, was one of the corporations that entered into said trust and formed a part thereof; and that Henry Clay Pierce is president; Arthur M. Finley, vice-president; C. M. Adams, treasurer; J. P. Gruet, secretary; and E. Wells, auditor. And it further charged that John D. Rockefeller, Henry M. Flagler, William Rockefeller, John D. Archbald, Benjamin Brewster, Henry H. Rogers, Wesley H. Tilford, Henry Clay Pierce, Arthur M. Finley, C. M. Adams, J. P. Gruet, and E. Wells (the same parties alleged to compose the Standard Oil trust and the Waters-Pierce Oil Co.), together with William Grice, E. T. Hathaway, F. A. Austin and William E. Hawkins—the first three division agents in Texas of the Waters-Pierce Oil Company, and the latter, William E. Hawkins, the local agent of said Waters-Pierce Oil Company in McLennan County—did unlawfully combine, conspire, and confederate with each other and among themselves, and with divers other persons in McLennan County, Texas, to the grand jurors unknown, in a conspiracy against trade, etc.; that is, it would appear that the conspiracy is charged to have been entered into between the trustees of the Standard Oil trust and the officers of the Waters-Pierce Oil Company, and three of the division agents in Texas and one of the local agents, to-wit: William E. Hawkins, of McLennan County. There is some proof in the record to the effect that the trust was formed as early as 1882, between some thirty-nine corporations, firms, individuals, and partnerships, and that the first seven named conspirators were the trustees of

said trust or combine, which was known as the "Standard Oil Trust;" and there is some proof in the record that the Waters-Pierce Oil Company was a party to said trust. But, aside from the fact that E. T. Hathaway was the agent of the Waters-Pierce Oil Company in Texas, we fail to find any evidence in the record that he was one of the original conspirators, or that he entered into the conspiracy at any time after it was formed. Of course, as stated before, the fact that he was an agent, if the proof went further, and showed that he was also a party to the conspiracy, would not absolve him from amenability to the law. We will notice those portions of the record which refer to Hathaway. Hiram Brooks, witness for the State, testified that he lived in Denison, Texas; that he knew defendant, Hathaway, and that he was known as the agent of the Waters-Pierce Oil Company in Denison; that he did not remember ever to have had any conversation with the defendant about the oil business to amount to anything in particular. Had purchased oil from him or his agents. Have had no conversation directly with him. Have talked with Mr. Hathaway. J. M. Cullers, witness for the State, testified: "That he lived at Sherman, Texas. Was acquainted with the defendant, Hathaway, and had known him for ten or fifteen years. He has been engaged in the oil business, and was agent for the Waters-Pierce Oil Company, prior to November, 1894; that is, division agent. Do not know the extent of his authority. Did not purchase oil from Hathaway, but from the local agent in Sherman. Would send orders to the local agent at Sherman, and it would be filled from the depot there. Stratton is the local agent at Sherman. We got the profit allowed jobbers of two cents per gallon. That the oil was billed to them at the price they were selling to the general trade, and the invoice was furnished from Denison by Mr. Hathaway, with the number of gallons bought. At the end of the month a statement of the account, less two cents a gallon on what had been bought, was sent us. Hathaway did not furnish us any price list at which oil should be sold in case competing companies came into the market." A. W. Clem, witness for the State, testified that he met Hathaway in the spring of 1894; that Hathaway did not know that he (Clem) was an agent of the Waters-Pierce Oil Company; that the defendant had charge of the northern division of the Waters-Pierce Oil Company with headquarters at Denison. This was in effect all the testimony offered by the State concerning the appellant Hathaway. We quote from the testimony of E. T. Hathaway given in chief, as follows: "My name is E. T. Hathaway. I reside at Denison, Texas, and have resided there since 1878. I have resided in Texas since 1878, and my present position is agent for the Waters-Pierce Oil Company. I have been such agent since June of 1878. The Waters-Pierce Oil Company did business in Texas prior to 1878, but not under its corporate name. Waters, Pierce & Co. did business prior to that time. They were incorporated in 1878, and continued the business of selling oil. I do not know John D. Rockefeller, nor Henry M Flagler, nor Wm. Rockefeller, nor John D. Archbald, nor Benjamin Brewster, nor

Henry H. Rogers, nor Wesley H. Tilford. I never had any connection with any of these gentlemen, directly or indirectly. I never had a letter from them or either of them, or instructions from either of them. I was employed by the Waters-Pierce Oil Company, and that company pays me. My present salary as agent and employe is $2,700 per annum. I knew W. E. Hawkins. I never had any dealings with Hawkins in Mc-Lennan County, or anywhere else of any character or nature. I never sold any oil in McLennan County. I own no stock in the Waters-Pierce Oil Company, nor do I own any stock in the Standard Oil Trust, nor did I ever own any stock in either company. I know nothing about the Standard Oil Trust. I am simply an agent on salary. I never knew of any combination between the Waters-Pierce Oil Company and the Standard Oil Trust, or the officers of either of them. I never did any act knowingly and within my knowledge in the furtherance of the Standard Oil Trust, or any conspiracy of that kind with trade, in restriction of trade. The oil that I sold came from St. Louis. It is brought in from St. Louis, State of Missouri, and sold in Texas in unbroken packages; that is, it is brought in tank cars as well as in barrels and cases, and sold in those barrels and cases. It is kept in stock until it is sold. I know nothing whatever about the management of the Waters-Pierce Oil Company at St. Louis."

It will be seen that the State, by its testimony, failed to reach defendant with any evidence even tending to show that he was an original conspirator, or that he entered into a conspiracy in restraint of trade, which, of course, would apprehend that he had full knowledge of the object and purposes of such conspiracy, and its plan of operations. And when we come to consider his testimony, his evidence shows that his only connection with the alleged trust, was as agent and employe of the Waters-Pierce Oil Company at a stipulated salary of $2,700 a year. A great deal of evidence is presented in this record, showing the method of dealing on the part of the Waters-Pierce Oil Company at various points in the State of Texas; but it is remarkable that this testimony is, for the most part, at other points and in other divisions than that alloted to the defendant, Hathaway. And there is no proof furnished in the record that brings him in contact with any of the methods pursued by said trust which is obnoxious to the provisions of the statute in question. Certainly there is no testimony of any connection on his part, or that he had anything to do with the oil trade in McLennan County. McLennan County was in another and distinct division, and not under his management or control. Not only does the State fail to furnish any affirmative proof bringing him in contact with the transactions of Grice and Hawkins, in McLennan County, but by his own testimony he negatives the proposition that he had anything whatever to do with the oil trade or with cutting rates on oil in McLennan County. Quoting from his testimony, he says: "I never had any dealing with Hawkins in Mc-Lennan County, or anywhere else, of any character or nature. I never sold any oil in McLennan County." Of course, if there was testimony

in this case showing that he was one of the original conspirators, or that he entered into a conspiracy, after it had been formed, he might be affected by the acts of the agents of the said trust in McLennan County. But, as we have seen, there is no such testimony. If he had been indicted as an agent for some act done in McLennan County, the proof would not have sustained the accusation, because there is no testimony that he acted as such agent or in conjunction with any such agent of the trust in McLennan County; nor is there any evidence tending to show that he advised, aided, or encouraged any man in Texas, or anywhere else, to enter into this conspiracy, or to act as an agent therefor. If appellant had acted as an agent for the conspiracy, with full knowledge of its purposes, and proof had been made of this fact, he could not be convicted under the allegations of this indictment. To hold him responsible as an agent, the indictment must allege the fact that he knew of the conspiracy and its purposes. See, State v. Stalls, 37 Texas, 440; Pressler v. State, 13 Tex. Crim. App., 95; Hunter v. State, 18 Tex. Crim. App., 444. As we have seen, there is no count in the indictment charging appellant as principal, manager, director, agent, servant, or employe, or that he in any capacity acted for said trust, and knowingly carried out any of the purposes, stipulations, prices, rates, or orders thereunder, or in pursuance thereof. And if there had been ever so much proof on this subject, the conviction could not have been sustained. However, the learned judge who tried this case seems to have proceeded upon this idea, as is demonstrated from the following portion of his charge, which is quoted, as follows: "And if you further believe from the evidence that at said last-mentioned time—that is, within three years next preceding November 21, 1894—either of the defendants, William Grice or William E. Hawkins, was then and there the agent of said Waters-Pierce Oil Co., and as such agent was at said time engaged in knowingly carrying out in McLennan County any and all of the provisions, terms, and purposes of said agreement and combination so entered into by the said Waters-Pierce Oil Co. (if any) as aforesaid, and you further find that at said time this defendant, E. T. Hathaway, was also agent of said Waters-Pierce Oil Co., and as such was at the same time engaged as such agent in knowingly carrying out and maintaining the purposes, provisions, and terms of said agreement by the said Waters-Pierce Oil Co. on January 2, 1882, as hereinbefore mentioned (if any), anywhere within the State of Texas, then, if you so believe, beyond a reasonable doubt, you will find the said defendant, E. T. Hathaway, guilty as charged in the indictment, and assess his punishment as hereinbefore stated. And in this connection you are charged that it is wholly immaterial whether or not he, the said E. T. Hathaway, was at any time in McLennan County. You are further charged that the contract offered in evidence, dated January 2, 1882, also the supplemental agreement dated January 4, 1882, and which is designated as the 'Standard Oil Trust Agreement,' includes not only the corporations, individuals, firms, partnerships, and associations

of persons therein mentioned, but all persons acting for or in connection with said corporations, firms, partnerships, individuals, or associations of persons, whether they be acting in the capacity of officers, managers, directors, agents, servants, or employes, or in any capacity whatever. And you are further charged that said contract so made and entered into as aforesaid is a combination, trust, and conspiracy in that it 'creates restrictions in trade;' and if you believe from the evidence beyond a reasonable doubt that at any time within three years immediately prior to November 21, 1894, said contract was in existence and in full force and effect as therein provided, and as such was then and there being executed and carried out in the State of Texas, by or through the officers of said Waters-Pierce Oil Co.; and if you further find that the purposes and provisions of said agreement was at said time being knowingly carried out and in force within the State of Texas by the managers, agents, servants, and employes of said Waters-Pierce Oil Company, including this defendant, E. T. Hathaway; and you further find beyond a reasonable doubt that at said time, during the period last mentioned, the purposes and provisions of said agreement were knowingly being carried out and enforced in the County of McLennan by W. E. Hawkins or William Grice, or any other servant or employe of said Waters-Pierce Oil Company—then if you so find, you should find the defendant, E. T. Hathaway, guilty as charged in the indictment, and assess his punishment therefor as has hereinbefore been directed." If there had been a count in the indictment charging the appellant as a servant or agent of said trust in McLennan County, Texas, then the charge in question, if it had otherwise been a correct legal charge, would have been applicable under such indictment; but under the indictment in this case it was wholly inapplicable, because, as we have seen, if convicted at all, he could only be convicted as a principal conspirator. The record in this case is exceedingly meager of any acts of appellant done in his own district or division, and such as were there discharged were purely and simply as an agent of the Waters-Pierce Oil Company. Whether he would be indictable for said acts in one of the counties of his own district is not the question here. But the simple question is, does the record show that he was a conspirator, so as to make him guilty of some act done by the trust in McLennan County, Texas, in restraint of trade? The record fails to furnish us with any evidence that would fasten him to the conspiracy, so as to make him amenable as a conspirator in McLennan County.

There are some constitutional questions raised in this case. Some of the questions have been before our Supreme Court, and it has been decided by that tribunal that the law in question is constitutional. It is claimed by the appellant, however, that the decision is obiter, and, moreover, that the decision of the question by that tribunal is not binding upon us. While the presumption will be indulged that the decision of the Supreme Court is correct, yet a discussion and decision of the question, in the view we have taken, is not necessary in determining this case. This question has been before the Supreme Court in the follow-

ing cases: Association v. Houck (Tex. Civ. App.), 27 S. W. Rep., 696; Houck v. Association, 88 Texas, 184; Coal Co. v. Lawson (Tex. Sup.), 34 S. W. Rep., 919; and, Welch v. Windmill Co. (recently decided), 36 S. W. Rep., 71. Because the court charged on a phase of the case not supported by any allegation in the indictment, and because the evidence wholly fails to sustain this verdict, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*